779 F.2d 53
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED MINE WORKERS OF AMERICA, DISTRICT 6, LOCAL UNION
1323, Plaintiff-Appellee,
vs.
PEABODY COAL COMPANY, Defendant-Appellant.
 84-3880
 United States Court of Appeals, Sixth Circuit.
 10/29/85
 
 REVERSED
 S.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 Before: MERRITT and CONTIE, Circuit Judges; and DeMASCIO, District Judge.*
 PER CURIAM.
 
 
 1
 Peabody Coal Co. appeals from an order of the district court vacating an arbitration award requiring the company to pay union member Tom Hewlett, in compensation for a wrongful failure to recall, back pay less compensation Hewlett received from other employment during the period of the wrongful failure to recall. For the reasons that follow, the judgment of the district court is reversed.
 
 I.
 
 2
 On July 8, 1982, Local Union 1323, United Mine Workers of America, filed a complaint seeking to vacate an order of arbitrator Patrick J. Duff pursuant to 9 U.S.C. Secs. 10, 11, 28 U.S.C. Sec. 1331, 29 U.S.C. Sec. 185(a). The arbitration on the grievance of Tom Hewlett was held on March 5, 1982, and, on April 5, Duff granted the grievance and ordered Peabody to pay back wages less other wages earned and unemployment benefits, equaling $6,032.81. The Union contended that the National Bituminous Coal Wage Agreement of 1981 (NBCWA), to which the Union and Peabody were parties, obligated the arbitrator to follow the decisions of the Arbitration Review Board in making his award. The Union asserted that Duff failed to follow Arbitration Review Board Decision 101 by requiring that interim earnings be deducted from the award of backpay.[1] The union sought to have the award vacated and modified, and sought costs and attorney fees.
 
 
 3
 On May 27, 1983, the parties agreed to a stipulation of facts wherein the parties agreed that the NBCWA provided for binding arbitration with respect to the 'right to recall from layoff and the remedy to be awarded,' and that the NBCWA 'provides that decisions rendered by the Arbitration Review Board prior to the expiration of the NBCWA 1978 shall continue to have precedential effect under the NBCWA 1981 to the extent that the basis for such decisions have not been modified by subsequent changes in the NBCWA 1981.' The parties agreed that the arbitrator had found several facts including that Hewlett was laid off on October 13, 1978 due to economic factors; that Hewlett was employed during his layoff; that on November 12, 1978 Hewlett completed additional miner training necessary to be eligible for recall and that he presented a certificate of retraining to Peabody on November 13, 1981; that on November 16, 1981, one miner with less seniority than Hewlett was recalled; and that Hewlett earned $6,032.81 from November 16, 1981 to his date of recall. Duff found that Hewlett should have been recalled on November 16, and the parties do not contest this finding.
 
 
 4
 Art. XXIII, Sec. (C) of the collective bargaining agreement provides that arbitration is the remedy for differences 'between the Mine Workers and an Employer as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement.' The agreement further provides that '[t]he arbitrator's decision shall be final and shall govern only the dispute before him.' Art. XXIII, Sec. (h) provides in part:
 
 
 5
 Decisions reached under this provision shall be final and binding. All decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this Agreement.
 
 
 6
 On July 15, 1983, Peabody moved for summary judgment, and on July 18, the Union moved for summary judgment. On September 25, 1984, the district court granted plaintiff's motion for summary judgment, and ordered that the award of the arbitrator be vacated 'to the extent that it offset other employment remuneration against the award of back wages.' The district court, reviewing the arbitration award for consistency with the collective bargaining agreement, found that Decision 101 was not distinguishable from the instant case, and vacated the award.
 
 II.
 
 7
 The standards governing our jurisdiction over actions to vacate arbitration awards were recently summarized.
 
 
 8
 Section 11 of the statute provides in relevant part that a federal court may modify or correct an arbitration award '[w]here there was . . . an evident material mistake in the description of any person, thing, or property referred to in the award' or '[w]here the award is imperfect in matter of form not affecting the merits of the controversy'; in short, the court 'may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.' 9 U.S.C. Sec. 11. The power to vacate is apparently more limited. The statute provides in pertinent part that an award may be vacated only '[w]here the arbitrators were guilty of misconduct . . . in refusing no hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced', or '[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.' 9 U.S.C. Secs. 10(c), (d).
 
 
 9
 In the Steelworkers Trilogy cases decided in 1960, the Supreme Court clarified the judiciary's role in the specific context of labor arbitration pursuant to collective bargaining agreements. Noting that 'arbitration of labor disputes had quite different functions from arbitration under an ordinary commercial agreement,' the Court stated that the role played by the judiciary in the context of collectively bargained-for arbitration should be 'strictly confined.' Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 578, 582, 80 S. Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). In Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960), the Court discussed the role of labor arbitrators and the power of a federal court to review their awards:
 
 
 10
 [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
 
 
 11
 . . . Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 
 
 12
 Id., 363 U.S. at 599, 597, 80 S. Ct. at 1362, 1361; see also Timken Co. v. Local No. 1123, United Steelworkers of America, 482 F.2d 1012 (6th Cir. 1973). Consequently, an arbitrator's decision is entitled to great deference and generally should be upheld absent irrationality or disregard of plain and unambiguous language in the agreement. See, e.g., General Telephone Co. of Ohio v. Communications Workers, 648 F.2d 452, 457 (6th Cir. 1981); Detroit Coil v. International Ass'n of M. & A. Workers, 594 F.2d 575, 579-81 (6th Cir.), cert. denied, 444 U.S. 840, 100 S. Ct. 79, 62 L.Ed.2d 52 (1979).
 
 
 13
 National Post Office v. U.S. Postal Service, 751 F.2d 834, 840 (6th Cir. 1985); Ford Motor Co. v. Plant Protection Association National, 770 F.2d 69, 74 (6th Cir. 1985). It is clear of course that we do not substitute our judgment for that of the arbitrator, nor do we vacate for a 'mere error in interpretation or application of the law.' Anaconda Co. v. District Lodge No. 27 of International Ass'n of Machinists, 693 F.2d 35, 37-38 (6th Cir. 1982); National Railroad Passenger Corp. v. Chesapeake and Ohio Railway Co., 551 F.2d 136, 142-43 (7th Cir. 1977); Amoco Overseas Oil v. Astir Navigation Co., 490 F. Supp. 32, 37 (S.D. N.Y. 1979). See Morgan Services, Inc. v. Local 323, Chicago and Central States Joint Board, 724 F.2d 1217, 1220-22 (6th Cir. 1984). However, 'where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator 'exceeded [his] powers, or so imperfectly executed them' that vacation may be proper.' National Post Office, 751 F.2d at 843.
 
 
 14
 The burden is on the party challenging an award, Local Union No. 251 v. Narragansett Improvement Co., 503 F.2d 309, 312 (1st Cir. 1974), and the discretion entrusted to an arbitrator extends to the remedies chosen by the arbitrator, National Post Office, 751 F.2d at 842. '[U]nless the remedy chosen by an arbitrator is expressly or implicitly prohibited by the terms of the bargaining agreement, or, unless the contract provides for an exclusive remedy, then the particular remedy fashioned by the arbitrator is not to be vacated by the judiciary.' Sverdrup/Aro, Inc. v. International Association of Machinists, 532 F. Supp. 143, 146 (E.D. Tenn. 1980).
 
 
 15
 We find in the instant case neither the irrationality nor manifest infidelity to the collective bargaining agreement that National Post Office requires in order to support vacation of the arbitrator's award. The mere fact that we might have reached a different conclusion on the question presented to the arbitrator does not alter the fact that it is the decision of the arbitrator, and not of this court, for which the parties have bargained. In light of the deference we accord to the arbitrator in interpreting the collective bargaining agreement and formulating remedies for the breach thereof, we conclude that the district court erred in vacating the arbitrator's award.
 
 
 16
 Accordingly, the judgment of the district court is REVERSED.[2]
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Decision No. 101, on which the district court relied, involved a wrongful layoff and the Board held 'that earnings from other employers should be treated as not deductible' from an award of backpay. The Board noted that 'there is the hardship of separation from regular employment. We do not believe that the earnings from continued regular employment and the earnings which result from losing the regular employment and thereupon hunting for other work can fairly be given equivalent status. Second, except that there are UC implications, it is not an employee's obligation to seek other gainful employment where he has been laid off or discharged and the action against him is under protest. It is at his own initiative that such an employee seeks other gainful employment. A holding that 'outside' earnings are deductible would act as a deterrence against the exercise of the initiative--and would, for that reason, constitute bad policy. Third, a holding in principle that 'outside' earnings are deductible would create an administrative nightmare.' The Board made clear that it did not intend to limit its holding to the layoff fact pattern
 
 
 [2]
 Since we conclude that no ground existed to support vacation of the award, we do not consider Peabody's contention that the union, by failing to draw Decision 101 to the arbitrator's attention, waived its right to raise such as a ground supporting vacation. National Post Office, 751 F.2d at 842 n.4; District 30, UMW v. Sovereign Coal Corp., 750 F.2d 37, 40 (6th Cir. 1984); United Steelworkers v. American Smelting and Refining Co., 648 F.2d 863, 870 (3d Cir.), cert. denied, 454 U.S. 1031 (1981); Amalgamated Meat Cutters v. Cross Brothers Meat Packers, Inc., 518 F.2d 1113, 1121 (3d Cir. 1975)