For all of the reasons set forth above, I would reverse the decision of the district court and reinstate the award of the arbitrator.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0087P (6th Cir.)
File Name: 01a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

APPALACHIAN REGIONAL
HEALTHCARE, INC.,
     *Plaintiff-Appellee,*

   *v.*

UNITED STEELWORKERS OF
AMERICA, AFL-CIO-CLC,
LOCAL 14398, and UNITED
STEELWORKERS OF AMERICA,
    *Defendants-Appellants.*

No. 99-6590

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 99-00007—Joseph M. Hood, District Judge.

Argued: November 3, 2000

Decided and Filed: March 29, 2001

Before: KRUPANSKY, BATCHELDER, and GILMAN,
Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** David I. Goldman, UNITED STEELWORKERS OF AMERICA, AFL-CIO/CLC, Pittsburgh, Pennsylvania, for Appellants.  Michael A. Manzler, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellee.  **ON BRIEF:** David I. Goldman, UNITED STEELWORKERS OF AMERICA, AFL-CIO/CLC, Pittsburgh, Pennsylvania, for Appellants. Michael A. Manzler, Michael W. Hawkins, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellee.

KRUPANSKY, J., delivered the opinion of the court, in which BATCHELDER, J., joined.  GILMAN, J. (pp. 12-16), delivered a separate dissenting opinion.

————————————

**OPINION**

————————————

KRUPANSKY, Circuit Judge.  Defendant-Appellants the United Steelworkers of America, AFL-CIO-CLC, Local 14398, and the United Steelworkers of America (collectively, the "Union") challenge an award of summary judgment vacating an arbitrator's award which had required the reinstatement of three discharged employees at Plaintiff-Appellee Appalachian Regional Healthcare, Inc. ("ARH").

ARH, a not-for-profit charitable corporation under the laws of Kentucky, operates several hospitals and healthcare facilities in eastern Kentucky and West Virginia, including a hospital located in South Williamson, Kentucky, where the relevant events transpired.  The Union represents certain ARH employees at the South Williamson hospital including Chris Adkins, Steven Mahon and Lamar Thomas ("Grievants"), who contend that ARH violated the Collective Bargaining Agreement ("Agreement") by discharging them.

time employees to work overtime.  The arbitrator reached this conclusion by interpreting Article XV as providing the hospital with the authority to request only full-time employees, and not part-time employees, to perform overtime work.  Because I believe that the arbitrator had a sound basis for this conclusion, the hospital did not have the "just cause" necessary to terminate Adkins, Mahon, and Thomas under Article XXXII, Section A, of the CBA (governing discharge).

Indeed, additional articles of the CBA establish that the hospital does not have the unfettered right to hire or fire its employees.  Article X, Section D, for example, provides the bases for awarding various jobs to applicants depending on the grade of the employment openings.  Similarly, Article XXXII restricts the hospital from preemptorily discharging its workers, and instead requires an initial suspension pending a hearing.  In light of these articles, the arbitrator reasonably interpreted Articles XV and XLVII as circumscribing the termination rights available to the hospital under Article XXXII.

The majority's opinion, therefore, impermissibly replaces the arbitrator's construction of the Agreement with its own interpretation.  *See Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local Number 7*, 114 F.3d 596, 599 (6th Cir. 1997) .  Here, the arbitrator recognized that Article XLII gave the hospital the general authority to direct its workforce. But he interpreted this authority as not including the right to terminate part-time workers for refusing to perform unscheduled overtime work.  Because the arbitration award was based on a reasonable interpretation of ambiguous contractual provisions, we are required to defer to the determination of the arbitrator.  *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) (stating that "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.").

Arbitrator."  That is exactly what the arbitrator did in the present case, and the hospital should be bound to accept the result.  I would therefore defer to the determination of the arbitrator that the hospital's authority to compel overtime work applies only to full-time employees.  *See Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 155 F.3d 767 (6th Cir. 1998) (upholding an arbitrator's order requiring the Tennessee Valley Authority to create a bargaining unit for hourly employees, despite an existing agreement allowing outsourcing that arguably applied to these employees).

The majority also holds, in my view erroneously, that the arbitrator's order to reinstate the three employees impermissibly restricts the management rights of the hospital in a manner not expressly provided for by the agreement.  *See* Slip Op. at 10-11.  This case, however, involves an issue upon which the Agreement has spoken.  Article XLII of the CBA provides as follows:

> [T]he rights, among others, of hiring, discharging, and directing the working force, and of establishing reasonable policies in connection therewith, and all management rights are vested exclusively in the Hospital. However, these prerogatives shall not be used to discriminate against any member of the Union and any policy *shall not abridge any term, provisions or condition of this contract.*

(Emphasis added.)  The terms of the contract itself, therefore, limit the hospital's management rights to those that are in accordance with the other articles of the agreement.

Consequently, the arbitrator did not impose any additional requirements not expressly provided for in the agreement. The arbitrator, in fact, clearly acknowledged that he could not add to, subtract from, or modify the agreement.  Rather, he examined the other articles of the agreement to determine that the CBA did not grant the hospital the right to compel its part-

On December 30, 1997, Grievants were to work from 4:30 P.M. to 8:30 P.M., their normal shift as part-time workers in ARH's laundry room.  Shortly before 8:20 P.M., the foreman ordered[1] the Grievants to "stay on their machines" beyond 8:30 P.M.  Without offering a reason as to why they would not remain, Grievants refused and left the worksite. Grievants received a Written Record of Verbal Warning the next day. They were charged with violating the Code of Ethics[2] and leaving the worksite in contravention of a direct order to remain.    Grievants did not challenge this disciplinary decision.   On January 2, 1998, the Grievants were again ordered to work beyond 8:30 P.M.   Again they refused without offering a reason as to why they would not remain. Grievants were suspended by letter dated January 5, 1998. On January 8, 1998, they were discharged for insubordination in violation of the Code of Ethics.   Pursuant to the Agreement, the dispute was submitted to an arbitrator, W. Scott Thompson, who was mutually selected by the parties.

On October 13, 1998, the arbitrator heard testimony and accepted evidence concerning the employment dispute.  On December 11, 1998, the arbitrator issued an opinion and

---

[1]Before the arbitrator, the Union contended that ARH's supervisors did not issue a direct order.  The arbitrator found that ARH's supervisors indeed had issued direct orders and the Union does not challenge that finding here.

[2]The Code of Ethics provides in part:

(3) *Violations of the Code of Ethics*
The following acts are considered appropriate reasons for disciplinary action, however, these acts are obviously not all the reasons the Corporation may deem cause for disciplinary action.

   a.  Disregard of or refusal to comply with Corporate and/or facility policies, practices, proper orders and instructions from duly authorized supervisory employees.

award, finding that "Grievants shall be returned to work with all rights of seniority and benefits" and that "Grievants shall receive compensation for the period January 3, 1998, to March 2, 1998. They shall not receive compensation of any kind for the period March 2, 1998, until reinstatement to employment."[3]

In support of his judgment, the arbitrator found that the Agreement classified employees as either full-time or part-time employees.[4] While there is a provision governing mandatory overtime for full-time employees,[5] no provision is

---

[3] The arbitrator found that the Grievants were offered the opportunity to return to work and refused, thereby failing to mitigate damages. The arbitrator therefore limited the amount of backpay to which the Grievants were entitled.

[4] Article XLVII of the Agreement ("Part-Time Employees") provides:

The term "regularly employed part-time Employee" refers to persons who regularly work a number of hours and days a week which are less than the customary full forty (40) hour work week. Such persons shall be considered as regular, part-time Employees and shall customarily work on a regular part-time scheduled basis. All such employees shall enjoy proportionate holiday, vacation and sick leave benefits based upon the actual number of straight time hours worked per pay period.

[5] Article XV of the Agreement ("Hours of Work and Work Week") provides:

Section A. The basic work day for all Employees under this Article shall be eight (8) hours per day. The basic work week for said Employees shall be forty (40) hours per week. The work week shall begin with the first shift on Monday, which is sometimes referred to as the "C" shift.

Section B. Hours worked in excess of the basic work day (8 hours) or the basic work week (40 hours) shall be paid at the rate of time and one-half the regular straight time rate. Overtime payments, payable under the foregoing overtime policies, shall not be pyramided. Overtime payments for the week shall be

endeavor, insofar as may be practicable, to make an equitable distribution of overtime among the qualified Employees within a job classification. An Employee will not be disciplined for refusing to work overtime who has good and sufficient cause for so refusing to work overtime.

(Emphasis added.)

Although Section D of Article XV *could be* interpreted as allowing the hospital to require overtime work for all of its employees, both full-time and part-time, I believe that the more reasonable interpretation (and the one adopted by the arbitrator) is that Section D applies only to full-time employees covered by Article XV. There is, after all, a separate Article XLVII governing part-time employees. Article XLVII is comprised of four sections covering such topics as scheduling, job benefits, and ability to post for vacancies, none of which mention overtime work.

Such ambiguity, I believe, requires this court to uphold the arbitrator's award. When examining an arbitration award under facts "not explicitly covered" by an agreement, a court may disagree with the arbitrator's interpretation, but may not reject the interpretation so long as it is "one of several rational interpretations." *Dallas & Mavis Forwarding Co. v. Gen. Drivers, Warehousemen & Helpers, Local Union No. 89*, 972 F.2d 129, 135 (6th Cir. 1992) (upholding an arbitrator's determination that the employer violated the CBA by refusing to merge its seniority list with that of another employer, even though other interpretations were possible). In the present case, the arbitrator's remedy of reinstating the employees does not appear to conflict with any provision of the CBA.

Article XXXII of the CBA, in fact, explicitly provides that "[i]n the event a grievance concerning suspension or discharge goes to arbitration, the arbitrator shall have the authority to modify the penalty, and the Hospital and the Union agree to in all respects comply with the award of the

_____

**DISSENT**

_____

RONALD LEE GILMAN, Circuit Judge, dissenting. I fully agree with the majority's articulation of the proper standard for reviewing the arbitrator's award, i.e., that "[a] reviewing court will not replace an arbitrator's construction of the Agreement with its own interpretation." Slip Op. at 6. Unfortunately, however, I am convinced that this is precisely what the majority has done.

The majority purports to vacate the arbitrator's award on two grounds: (1) that the award conflicts with the express terms of the collective bargaining agreement (CBA), and (2) that the award imposes additional requirements that are not expressly provided for in the agreement. To the contrary, I am of the opinion that the award is in full accord with the CBA and based on a reasonable interpretation of its express terms. I would therefore reverse the ruling of the district court and reinstate the arbitrator's award.

In determining that the award conflicts with the express terms of the CBA, the majority finds that the agreement recognizes the hospital's right to require overtime of all its employees and to fix the number of hours in the work week. Article XV of the CBA, however, upon which the majority relies, is ambiguous as to whether it applies to all employees or only to full-time employees. The key terms of Article XV provide as follows:

Section A.  The basic work day for all Employees *under this Article* shall be eight (8) hours per day. The basic work week for said Employees shall be forty (40) hours per week. . . .

Section D.  Employees shall be expected to work overtime when requested, however, the Hospital shall

made for mandatory overtime for part-time employees. This omission was significant. The arbitrator concluded, "I have examined the Collective Bargaining Agreement thoroughly. I find no Contract provision which permits the employer to arbitrarily require 'overtime' work by regular part-time employees in addition to their regularly scheduled hours of work."

ARH filed a complaint in the Eastern District of Kentucky on February 4, 1999, alleging that the arbitrator "ignor[ed] express, unambiguous provisions of the Agreement retaining to ARH all management rights to 'direct[] the work force'"[6]

_____

made under whichever policy allows the greater amount of such pay.

...

Section D.  Employees shall be expected to work overtime when requested, however, the Hospital shall endeavor, insofar as may be practicable, to make an equitable distribution of overtime among the qualified Employees within a job classification. An Employee will not be disciplined for refusing to work overtime who has good and sufficient cause for so refusing to work overtime.

Section E.  The provisions of this Article are intended only to provide a basis for determining the number of hours of work for which an Employee shall be entitled to be paid at overtime rates and shall not be construed as a guarantee to such Employee of any specified number of hours of work either per day or per pay period or as limiting the right of the Hospital to fix the number of hours of work, including overtime, either per day or per pay period, for such Employee.

[6] Section A of Article XLII of the Agreement ("Management Rights") provides:

Management of the Hospital includes the rights among others of hiring, discharging, and directing the working force, and of establishing reasonable policies in connection therewith, and all management rights are vested exclusively in the Hospital and

and 'fix the number of hours of work'[7][.]"  On November 2, 1999, on motion for summary judgment by ARH, the lower court held that "[a] collective bargaining agreement need not lay out specific guidelines that indicate what an employer is 'permitted' to do by contract to manage its business or direct its workforce; rather, it is free to manage except as specifically prohibited by a collective bargaining agreement." It then vacated the arbitral award.  The Union timely appealed on November 24, 1999.

We review the district court's decision to award summary judgment to ARH *de novo.  See Electrical Workers Local 58 Pension Trust Fund v. Gary's Elec. Service Co.*, 227 F.3d 646 (6th Cir. 2000).  No dispute as to a material fact exists.

Review of an arbitrator's award is necessarily limited.  A reviewing court will not replace an arbitrator's construction of the Agreement with its own interpretation.  "The Supreme Court has made clear ... that courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed." *Beacon Journal Publishing Co. v. Akron Newspaper Guild, Local 7*, 114 F.3d 596, 599 (6th Cir. 1997).  But the arbitrator's construction must "draw[] its essence from the collective bargaining agreement" rather than serve the arbitrator's "own brand of industrial justice." *United Steelworkers of Am. v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 597 (1960).

This court has vacated arbitral awards in four types of cases:

---

shall not be abridged by the Union.  However, these prerogatives shall not be used to discriminate against any member of the Union and any policy shall not abridge any term, provisions or condition of this contract.

[7]*See* note 4 *supra* (Article XV, Section E).

a limitation on ARH's management rights that is not found in the Agreement.[12]  In so doing, the arbitrator's decision failed to draw its essence from the Agreement.[13]

For the foregoing reasons, the lower court's award of summary judgment is **AFFIRMED**.

---

claims.

[12]"When a collective bargaining agreement prohibits the addition of contract terms, the arbitrator may not proceed to do so." *International Brotherhood of Electrical Workers v. Thomas & Betts Corp.*, 182 F.3d 469, 472 (6th Cir. 1999).  The Agreement expressly prohibits the arbitrator from "add[ing] to, subtract[ing] from, or modify[ing] in any way, any terms of the Agreement[.]"  Agreement, Article XXXIII, § K.

[13]ARH contends that the arbitrator's decision was in contravention of Kentucky public policy.  As we vacate the decision on other grounds, we do not reach this issue.

Arbitral Award, slip op. at 7 (emphasis added). The Agreement need not include provisions permitting management action on every conceivable employment matter; rather, on issues not discussed in the Agreement, management retains discretion. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ("Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them. Management hires and fires, pays and promotes, supervises and plans. All these are part of its function, and absent a collective bargaining agreement, it may be exercised freely except as limited by public law and by the willingness of employees to work under the particular, unilaterally imposed conditions.").[11] The arbitrator created

---

[11]The Union cites to a different passage in *Warrior & Gulf*, contending that the case eviscerated the doctrine that management rights were paramount when not specifically abrogated by the collective bargaining agreement:

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law--the practices of the industry and the shop--is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished.

*Warrior & Gulf*, 363 U.S. at 581-82. This passage does not bear the weight of the Union's argument. As quoted in the text accompanying this footnote, which immediately follows the above-quoted passage, the *Warrior & Gulf* Court did not abrogate management rights. In addition, the past practices of ARH and industry behavior did not inform the arbitrator in his resolution of the issue and the Union did not submit any evidence to this court of past practices or industry behavior to support its

---

(1) an award conflicts with express terms of the collective bargaining agreement, *see, e.g., Grand Rapids Die Casting Corp. v. Local Union No. 159, U.A.W.*, 684 F.2d 413 (6th Cir.1982);

(2) an award imposes additional requirements that are not expressly provided in the agreement, *see, e.g., Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154 (6th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983);

(3) an award is without rational support or cannot be rationally derived from the terms of the agreement, *see, e.g., Timken Co. v. United Steelworkers of America*, 482 F.2d 1012 (6th Cir.1973); and

(4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement, *see, e.g., Local 342, United Auto Workers v. T.R.W., Inc.*, 402 F.2d 727 (6th Cir.1968), *cert. denied*, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969).

*See Cement Divs., Nat. Gypsum Co. v. United Steelworkers of Am., et al.*, 793 F.2d 759, 766 (6th Cir. 1986). In addition, Article XXXIII, § K of the Agreement specifically provides that an arbitrator "shall have no power to add to, subtract from, or modify in any way, any terms of the Agreement, nor shall he exercise any responsibility or function of the Hospital."

In the instant case, as observed by the district court, the arbitrator's decision conflicts with express provisions in the Agreement and imposes requirements on ARH which do not flow from the Agreement itself. The Agreement explicitly reserves to management the power to direct the work force

and fix the number of hours of work to the management.[8] Moreover, in Article XV, the Agreement expressly provides that "[e]mployees shall be expected to work overtime when requested [unless good cause is shown]."

The Union argues that Article XV does not apply to part-time workers as Section A of the article indicates that "[t]he basic work day for *all Employees under this Article* shall be eight (8) hours per day. The basic work week for said Employees shall be forty (40) hours per week." Agreement, Article XV, Section A (emphasis added). The Union contends that part-time workers have a reduced work schedule so this article must not apply to them. The Union's contention is unavailing. Section E of Article XV indicates that "[t]he provisions of this Article are intended only to provide a basis for determining the number of hours of work for which an Employee shall be entitled to be paid at overtime rates and shall not be construed as a guarantee to such Employee of any specified number of hours of work either per day or per pay period or as limiting the right of the Hospital to fix the number of hours of work, including overtime, either per day or per pay period, for such Employee." Read in the light of Section E, Section A's "all Employees *under* this Article" (emphasis added) does not restrict the universe of employees which are subject to its requirements, but rather limits the effect of those requirements to determining overtime pay. The arbitrator was therefore wrong to conclude that there was no provision permitting ARH to direct its part-

---

[8]The Union argues that these provisions do not specifically permit ARH to require part-time employees to work beyond their regularly scheduled shifts. First, this argument ignores the express requirement in Article XV, which allows ARH to fix the number of hours its employees work overtime. Second, insofar as Article XV does not accord ARH the relevant authority, the management rights to direct its workforce and fix the number of hours are particular enough to support ARH's orders to work overtime.

time workers to work overtime.[9] The arbitrator's construction of the Agreement conflicts with express provisions and therefore fails to draw its essence from the Agreement.[10]

Nevertheless, even if we were to credit the arbitrator's construction of the Agreement as against its conflict with express provisions, we would still have to vacate the award as it imports notions not found in the Agreement itself. The arbitrator makes this error clear in his opinion accompanying the judgment:

> I find no Contract provision which *permits* the Employer to arbitrarily require "overtime" work by regular part-time employees in addition to their regularly scheduled hours of work. Article XV, Section B, only mandates "overtime" work when employees are requested to work in excess of eight hours per day. There is no provision *permitting* the Employer to require an employee to work more than their regularly scheduled part-time hours. Article XLII only permits the Employer to direct the working force and of establishing reasonable policies in connection therewith. These prerogatives shall not abridge any term, provision, or condition of this Contract.

---

[9]Relevant in this regard is Article XLVII which classifies part-time employees. It indicates that "part-time Employees ... shall *customarily* work on a regular part-time scheduled basis." (emphasis added). This phrasing highlights the management's right to expand on the normal workshift for part-time employees.

[10]The Union argues that the Agreement gave the arbitrator the power to "modify the penalty" in discharge cases. Agreement, Article XXXII, § C ("In the event a grievance or discharge goes to arbitration, the arbitrator shall have the authority to modify the penalty[.]"). The Union asserts that the arbitrator merely modified the employment termination. However, even a cursory review of the arbitrator's opinion demonstrates that the arbitrator determined that ARH was without authority to discipline the Grievants–the Union's post hoc contention notwithstanding.