**INTERNATIONAL CHEMICAL WORKERS UNION COUNCIL; Local 343C International Chemical Workers Union Council of the United Food and Commercial Workers, Plaintiff–Appellant,**

v.

**RJF INTERNATIONAL CORP., Defendant–Appellee.**

No. 02–4215.

United States Court of Appeals, Sixth Circuit.

May 19, 2004.

August Randall Vehar, Robert W. Lowrey, International Chemical Workers Union, Akron, OH, for Plaintiffs–Appellants.

John R. Cernelich, Calfee, Halter & Griswold, Cleveland, OH, for Defendant–Appellee.

Before BATCHELDER and GIBBONS, Circuit Judges; and COHN, District Judge.*

GIBBONS, Circuit Judge.

Patricia Kibbe, an employee of RJF International Corporation ("RJF"), filed a grievance over the company's decision to place her on unpaid leave after she tested positive during an employee drug screen. As provided by the terms of the applicable collective bargaining agreement ("CBA") between Kibbe's union, the International Chemical Workers Union Council (the "Union"), and her employer, Kibbe's grievance was referred to arbitration. The arbitrator issued an opinion sustaining the grievance and ordering that RJF immediately reinstate Kibbe and compensate her for lost wages for the period from September 12, 2000, to the date of her reinstatement, excluding a layoff period that occurred while Kibbe was on leave.

The Union and its local office filed suit in the United States District Court for the Northern District of Ohio, seeking to vacate or modify the arbitral award so as to provide for the payment of additional back pay (Count I) and to enforce the modified award (Count II). The complaint was later amended to request that the court order RJF to reinstate Kibbe retroactively (Count III). The Union and RJF each filed motions for summary judgment. The district court granted summary judgment

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

to RJF on Counts I and II and dismissed Count III.

On appeal, the Union argues that the district court erred in applying the Federal Arbitration Act ("FAA") to this case. With respect to the arbitration award, the Union contends that the award should be vacated or modified because the arbitrator failed to order sufficient back pay and to select the proper date for Kibbe's reinstatement. The Union also asserts that this court should remand the calculation of Kibbe's back pay award to the arbitrator and confirm portions of the award that the Union did not seek to have vacated. For the reasons set forth below, we affirm the decision of the district court.

## I.

Kibbe was employed by RJF at its facility in Marietta, Ohio. The company laid off Kibbe and other production line employees in 1999 due to lack of work. In late spring 2000, Kibbe was recalled to work. RJF informed Kibbe that, pursuant to company policy, she was required to complete a return-to-work drug and alcohol screening. Kibbe completed the examination on April 25, 2000, and she returned to work on April 30. On May 1, Kibbe learned that she had tested positive for phenobarbital, a barbiturate. Specifically, Kibbe's test revealed the level of phenobarbital as 3,164 ng/mL. In accordance with a company policy that set the permissible limit of barbiturates at 300 ng/mL, RJF placed Kibbe on indefinite leave. On May 5, 2000, Kibbe filed a grievance alleging that she was placed on indefinite suspension in violation of the CBA between the Union and RJF. Under the provisions of the CBA, Kibbe's grievance was referred to arbitration.

Soon after Kibbe learned that she was being placed on leave, her treating physician, Dr. Thomas Durnell, faxed RJF a letter stating that Kibbe was taking Bella-mine–S, a prescription medication used to treat the symptoms of menopause. On May 9, Kibbe participated in a second drug screen, and she again tested positive for phenobarbital at a level of 2,621 ng/mL. RJF informed Kibbe that, as a result of her second drug test, she would remain on indefinite leave. On May 17, the Medical Director of RJF contacted Dr. Durnell in a letter that acknowledged, "Ms. Kibbe is on a medication prescribed by you which contains a small amount of phenobarbital." The letter also inquired whether Kibbe could be placed on another medication that would control her menopause symptoms, "while not posing the same potential safety concerns that her current medications [sic] raises."

Dr. Durnell did not reply to this letter until September 12, 2000. In his September 12 letter to RJF, Dr. Durnell stated that he did not feel that there was reason to change Kibbe's medication and that he could not comment on potential safety concerns resulting from Kibbe taking Bella-mine–S. Furthermore, Durnell stated, "I have no knowledge of the nature of her employment responsibilities or the potential danger involved if Patricia would experience any side effects that would impair her ability to perform her job."

On February 9, 2001, Kibbe and other RJF employees were laid off. The parties do not dispute that, because of her seniority status, Kibbe would have been laid off from February 9 until March 26, 2001, even if she had not been on unpaid leave prior to the layoff. On March 26, RJF again recalled Kibbe and informed her that she needed to pass a return-to-work drug screening. Kibbe participated in another drug test, which was positive for phenobarbital at a level of 1,655 ng/mL. RJF maintained Kibbe on unpaid leave.

On November 30, 2001, after a hearing, the arbitrator assigned to Kibbe's case sustained her grievance. The arbitrator ordered that Kibbe be "reinstated with full seniority and benefits, compensated for all lost wages incurred, less outside earnings or unemployment compensation, if any, for the period from September 12, 2000 to the date of her reinstatement pursuant to this award." The arbitrator also noted that the "period of layoff from February 9, 2001 to March 26, 2001 is to be excluded from the lost wage calculation." The arbitrator did not award Kibbe compensation for overtime that she potentially could have earned during portions of her leave. The arbitrator remanded the issue of computing the amount due to Kibbe back to the parties but retained jurisdiction over the matter for sixty days "in the event the parties cannot reach agreement on the back pay award."

In response to the arbitrator's decision, Michael Struble, the Human Resources Manager of RJF, met with local union representatives on December 5, 2001. Struble told the Union that Kibbe would be removed from indefinite leave status for December 6 and 7 but would be placed on layoff status after December 7. Struble explained that RJF had scheduled the layoff prior to the issuance of the arbitrator's decision and that Kibbe's low seniority dictated that she be among the group of employees laid off. RJF agreed that Kibbe did not need to work on December 6 and 7, but the company would pay her salary for those days. Kibbe was again placed on layoff status.

In February 2002, the Union and its local division filed suit against RJF in district court, requesting that the court vacate or modify the arbitration award to the extent that it: (1) denied Kibbe back pay for the period from May 2, 2000, through September 11, 2000; (2) denied Kibbe payment for lost overtime; and (3) required deduction of Kibbe's interim earnings and unemployment compensation from RJF's payment (Count I). The Union also argued that the district court should confirm the arbitrator's award and enforce the arbitrator's opinion, with the Union's proposed modifications (Count II).

Kibbe remained laid off through April 17, 2002. She was recalled to work, effective April 29, 2002, and RJF required that Kibbe undergo another return-to-work drug screen. The results of Kibbe's drug test revealed a level of phenobarbital higher than any of Kibbe's earlier drug screenings. RJF refused to allow Kibbe to return to work unless one of five named medical professionals—including Kibbe's treating physician, Dr. Durnell—stated that she was able to safely and substantially perform her essential job functions.[1] On May 8, 2002, Dr. Durnell provided another evaluation to RJF, which read in part:

> I have been asked to ascertain that Patricia is completely capable of performing her job requirements without any physical impairment. I have no knowledge of Patricia's job requirements or the work environment and I am not by any stretch of the imagination a toxicology expert and I am not qualified to debate at what level physical impairment would occur. To the extent that my qualifications allow me, based on what I have seen, the Information that Patricia has provided to me, and my knowledge of this patient, I have re-

---

**1.** Because RJF did not allow Kibbe to return to work after her April 2002 drug screen, the Union filed another grievance. This grievance—which the Union concedes "is still being processed"—alleged that RJF had failed to reinstate Kibbe as ordered by the arbitrator's opinion.

leased Patricia to work without restrictions while she continues taking this medication.

RJF deemed Dr. Durnell's letter an insufficient statement of Kibbe's ability to perform her job safely. On May 14, Kibbe, the Union, and RJF agreed that another physician, Dr. Tom Herrmann, would evaluate Kibbe's condition. The Union then amended its complaint pending in district court, asking the court to order that RJF reinstate Kibbe retroactively and pay her benefits that she would have received if she had been reinstated earlier (Count III). On June 3, Dr. Herrmann sent RJF a letter stating that Kibbe was medically fit for her duties at RJF. The next day, RJF allowed Kibbe to return to work.

The Union and RJF each filed motions for summary judgment. RJF also filed, pursuant to Fed.R.Civ.P. 12(c), a motion to dismiss Count III of the Union's complaint. On September 10, 2002, the district court granted summary judgment to RJF with respect to Counts I and II. The court also granted RJF's motion to dismiss Count III. The Union filed a timely notice of appeal.

## II.

This court reviews the district court's grant of summary judgment to RJF on Counts I and II *de novo*. *Appalachian Reg'l Healthcare, Inc. v. United Steelworkers of Am.*, 245 F.3d 601, 604 (6th Cir. 2001). We also review *de novo* the district court's order dismissing Count III under Fed.R.Civ.P. 12(c). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

### A.

Before the district court, the Union argued that Kibbe's arbitration award should be modified or vacated in order to provide for additional back pay. In reviewing the Union's claim, the court found that the Union failed to establish the basis for modifying an arbitration award provided by the FAA, 9 U.S.C. § 11.[2] The court also found that the Union's argument for vacating the award failed because the arbitrator's award drew its essence from the CBA. Relying upon this analysis, the district court granted summary judgment to RJF on the Union's claim that Kibbe was entitled to additional back pay. On appeal, the Union argues that the district court erred in applying the FAA to this case and in granting summary judgment to RJF on the back pay issue.

■ We first address the Union's contention that the district court misapplied the FAA to its review of Kibbe's arbitral award. In *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the United States Supreme Court stated that, while the FAA does not apply to "contracts of employment of ... workers engaged in foreign or interstate commerce, ... the federal courts have often

---

**2.** Section 11 provides:

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

    (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

    (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

    (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

looked to the Act for guidance in labor arbitration cases . . . ." (first alteration in original). Relying on *Misco*, this court has acknowledged that the FAA may guide labor arbitration cases. *Am. Fed'n of Television & Radio Artists v. WJBK–TV*, 164 F.3d 1004, 1009 (6th Cir.1999) (citing *Misco*, 484 U.S. at 40 n. 9). Other circuits have reached the same conclusion. *See, e.g., Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1268 n. 3 (10th Cir.1999) ("The Court was interpreting the Federal Arbitration Act, 9 U.S.C. § 1–16, but there is no apparent reason why its conclusion should not apply equally to review of a labor-arbitration award."); *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union v. Excelsior Foundry Co.*, 56 F.3d 844, 848 (7th Cir.1995) ("The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, . . . although formally inapplicable to labor arbitration[,] is used as a source of principles to guide the formulation of a federal common law of labor arbitration . . . ."). Hence, we conclude that the district court did not err in considering the principles of the FAA when reviewing the arbitration award.

We turn to the merits of the Union's back pay claim. This court's review of an arbitration award is extremely deferential. *Lattimer–Stevens Co. v. United Steelworkers of Am.*, 913 F.2d 1166, 1169 (6th Cir. 1990) (noting that review of an arbitrator's decision is "one of the narrowest standards of judicial review in all of American jurisprudence"); *Local 2352 Amalgamated Clothing & Textile Workers Union v. Findlay Indus., Inc.*, Nos. 96–4377, 97–3229, 97–3402, 1998 WL 415998, at *4 (6th

Cir. July 7, 1998) ("Our task . . . is to interpret the arbitral decision in order to ascertain whether it satisfies the minimal requirements for judicial enforcement."). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Int'l Bhd. of Teamsters v. United Parcel Svc.*, 335 F.3d 497, 505 (6th Cir.2003) (quoting *Misco*, 484 U.S. at 36). We engage in such deferential review because "[t]he construction and interpretation of collective bargaining agreements is a job for labor arbitrators and not the federal judiciary." *Id.* at 506.

Accordingly, we defer to an arbitrator's findings of fact and interpretation of a CBA. *Id.; see also AP Parts Co. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 923 F.2d 488, 491 (6th Cir.1991) ("[T]his Court is very reluctant to vacate an arbitrator's award."). This court does not review an arbitration award "for mistakes of interpretation or even mistakes in law." *id.*, because "it is the arbitrator's construction of the [collective bargaining] agreement, not the court's construction, to which the parties have agreed." *Appalachian Reg'l Healthcare*, 245 F.3d at 604 (quoting *Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local 7*, 114 F.3d 596, 599 (6th Cir.1997)). In fact, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."[3] *Misco*, 484 U.S. at 38.

---

**3.** While review of an arbitrator's award is very limited, it is not entirely nonexistent. This court has vacated arbitral awards in four types of cases: (1) when an award conflicted with the express terms of the CBA; (2) when an award imposed additional requirements not expressly provided in the CBA; (3) when an award was without rational support or could not be rationally derived from the terms of the CBA; and (4) when an award was based on general considerations of fairness and equity instead of the precise terms of the CBA. *Appalachian Reg'l Healthcare*, 245 F.3d at 604–05.

In this case, the arbitrator awarded Kibbe back pay for the period beginning September 12, 2000, until her reinstatement.[4] The arbitrator selected this period because September 12, 2000, was the date that Kibbe's treating physician, Dr. Durnell, advised RJF that Kibbe's elevated barbiturate level was caused by her taking Bellamine–S. The Union argues that the arbitral award should be vacated because it did not award Kibbe back pay from the beginning of her leave in May 2000. We decline to vacate the arbitral award on this ground.

The arbitrator ordered that Kibbe receive back pay from September 12, 2000, instead of May 2000, because RJF was rightfully investigating the effect of Kibbe's prescription drug use until that time.[5] In so deciding, the arbitrator noted that RJF timely requested from Dr. Durnell in May 2000 whether Kibbe's prescription medication could be changed, but Dr. Durnell did not respond to the company's request until September 2000.

The Union contends that the award conflicts with Article IV, Section 4 of the CBA, which provides:

> If, as a result of any grievance, an employee is found to be *unjustly discharged, suspended, or laid off,* he shall be reinstated without loss of seniority and if such grievance was filed in writing within five (5) working days after the date of discharge, suspension, or layoff, shall be compensated at his regular hourly rate for the time lost as a result of such discharge, suspension, or layoff less pay for any penalty time decided upon, and less any unemployment compensation received by him during such period of discharge, suspension, or layoff.

(emphasis added). The arbitrator's decision does not conflict with the express terms of this section of the CBA. The arbitrator determined that "following the receipt of Dr. Durnell's September 12th letter, the Company should have concluded its investigation and allowed the Grievant to return to work." In essence, the arbitrator decided that RJF's unjust placement of Kibbe on leave began when the company was notified in September 2000 that Kibbe's prescription could not be changed but nonetheless kept her on unpaid leave status. Therefore, the arbitral award does not conflict with the express terms of the CBA.[6]

---

**4.** As discussed earlier, the arbitrator did not include the period between February 9, 2001, and March 26, 2001—the time that Kibbe would have been laid off even if she had not been on leave—from the back pay period.

**5.** The arbitrator's opinion states that the Union's own expert witness conceded that the company had the right to investigate Kibbe's prescription drug use.

**6.** The Union points to additional discrete provisions of the CBA in an attempt to demonstrate that the arbitral award conflicts with the agreement. None of the Union's arguments demonstrates any conflict between the terms of the CBA and the arbitrator's award. For instance, the Union argues that the absence of language in Article XIII. Section 4 of the CBA, which states that an employee returning to work after a period of eight days must provide notice to RJF's Human Resources department, presents a conflict because this section fails to mention any requirement of medical exams. We find it difficult to understand how the *absence* of language in the CBA demonstrates a conflict between RJF's drug testing policies and the CBA.

In addition, the Union cites Article XII, Section 2 of the CBA, as presenting a conflict with the arbitral award. That provision provides that employees who are unable to continue their regular jobs due to age, illness, or injury shall be transferred to other available work. In this case, Kibbe was placed on leave for testing positive on a drug screen and not for reasons related to age, illness, or injury.

The Union next presents a series of reasons for why the arbitrator should have relied on Dr. Durnell's May 2000 correspondence with RJF, instead of his September 2000 letter to the company, as the point from which back pay should accrue.[7] The thrust of the Union's argument appears to be that Dr. Durnell's initial explanation to RJF for Kibbe's prescription drug usage was adequate and, by deciding that RJF was permitted to follow up on this correspondence, the arbitrator violated the CBA. We agree with the district court that the Union offers no compelling argument that the arbitrator's refusal to credit the May 2000 correspondence violated the CBA.

Even assuming *arguendo* that it would have been proper for the arbitrator to rely on Dr. Durnell's May 2000 correspondence instead of his September letter, it is not for us to decide whether the arbitrator's decision is the result this court would have reached in the first instance. *United Mine Workers of Am. v. Peabody Coal Co.*, No. 84–3880, 1985 WL 13816, at *3 (6th Cir. Oct. 29, 1985) ("It is clear of course that we do not substitute our judgment for that of the arbitrator, nor do we vacate for a mere error in interpretation or application of the law.") (internal quotation omitted). Instead, this court must decide whether the arbitrator "arguably" applied the CBA and acted within the scope of his authority. *Misco*, 484 U.S. at 38. The arbitrator's award meets this standard, and we affirm the grant of summary judgment to RJF on Counts I and II.

## B.

The Union's next claim concerns Kibbe's reinstatement. As part of his November 30, 2001, opinion, the arbitrator ordered that Kibbe "be immediately reinstated with full seniority and benefits." Soon after the issuance of the arbitrator's opinion, RJF informed Kibbe that, due to her lack of seniority, she would be part of an upcoming company layoff. RJF agreed that Kibbe did not have to work for the two day period between the effective date of the arbitrator's order and the planned layoff, December 6 and 7, 2001, and the company paid her salary for those days. Kibbe was then placed on layoff status on December 7, 2001. She was recalled to work on April 29, 2002, but RJF did not allow her to return to work until June 4, when the company received Dr. Herrmann's opinion that Kibbe was medically fit to work. Because RJF decided to lay off Kibbe soon after the arbitrator's order, the Union amended its complaint to add Count III, which argues that RJF should reinstate Kibbe retroactively, effective within five days of the issuance of the arbitrator's award, or, alternatively, effective April 29, 2002, or upon receipt of Dr. Durnell's May 7, 2002, letter.

The district court dismissed Count III because the Union failed to resolve its dispute with RJF about Kibbe's reinstatement in accordance with the express terms of the CBA. The CBA provides that, be-

---

7. The parties did not provide Dr. Durnell's May 2000 correspondence in the joint appendix. The only indication of the substance of this correspondence comes from the arbitrator's opinion:

On the same day that the Company's request was submitted to him, Dr. Durnell faxed a letter indicating that he had prescribed Bellamine–S for Ms. Kibbe which she was to take at bedtime for hot flashes and sweats. On May 2nd, Dr. Durnell again faxed a letter to the Company indicating that Ms. Kibbe was a patient under his care who was currently taking Bellamine–S for hot flashes. He also indicated that the medication "should not interfere with her ability to perform her job safely and effectively." Dr. Durnell concluded that if the Company had any questions, they should contact his office.

fore the Union or RJF brings a legal action against the other, "counsel for both parties shall meet and make every reasonable effort to resolve the dispute before institution of such proceedings." The district court noted that, while the Union commenced arbitration on the issue of Kibbe's reinstatement, the Union did not even wait for the resolution of that proceeding before adding Count III to its complaint. Therefore, the court found that the Union did not make every reasonable effort to resolve its dispute with RJF concerning Kibbe's reinstatement before amending its complaint.[8]

The Union has not challenged the district court's conclusion that it did not make "every reasonable effort" to resolve issues regarding Kibbe's reinstatement without resorting to legal action—as mandated by the CBA. Since the Union failed to comply with the CBA in this respect, we affirm the dismissal of Count III of the Union's complaint.

Because we affirm the grant of summary judgment on Counts I and II and the dismissal of Count III, we decline the Union's request to remand the calculation of Kibbe's back pay award to the arbitrator and to confirm additional portions of the arbitral award.

## III.

For the foregoing reasons, the decision of the district court is affirmed.

---

8. While the court dismissed the Union's third cause of action on this basis, the court also noted that RJF did reinstate Kibbe, which due to her seniority level, resulted in her being affected by the company layoff in December 2001. In addition, the court stated that RJF's returning Kibbe to work on June 4, 2002, after receiving a "clear medical opinion" from Dr. Herrmann was consistent with the arbitration award.