KENNEDY, Circuit Judge,
concurring in part, and dissenting in part.
I agree with the majority that the arbitrator was entitled to conclude that the employer had agreed in Section 6.0 to settle all disagreements between it and the union by arbitration and that, in the absence of a provision governing the procedure to be used when the union itself files a grievance against the employer, the procedure provided for arbitration by nurses would be utilized insofar as its specific provisions were not inappropriate for resolving a dispute between the union and the employer. However, because I believe that the arbitrator’s remedy requiring the employer to obtain the union’s consent before implementing a change in benefits does not derive its essence from the agreement, but rather adds an additional requirement not provided for in the agreement based upon the arbitrator’s view of industrial justice, I respectfully dissent.
Section 12.7 of the collective bargaining agreement reserves to the employer the right to change insurance carriers provided that the level of benefits remain substantially the same. Moreover, this section provides that before the employer may implement a change in carriers, the employer must provide the union with notice, and, upon a request from the union, to explain and discuss with the union all matters related to the change. The arbitrator interpreted this section as providing an implied requirement that the employer must keep benefits substantially the same *851 regardless of whether the employer changes insurance carriers. I agree with the panel that, in reaching this conclusion, the arbitrator was arguably construing the agreement. In fashioning relief, however, rather than simply find that the employer has the obligation to keep benefits substantially the same and to notify, explain to, and discuss with the union regarding changes in benefits, all that is required by section 12.7 when there is a change in carriers, the arbitrator added the additional requirement that the employer must first obtain the union’s consent before implementing a change in benefits, a requirement not found in the agreement nor one rationally derived from it.
It is true, of course, that the employer could arbitrate the union’s failure to consent to a proposed change in coverage that the employer believes results in substantially the same benefits. However, the arbitrator’s requirement that the employer first get the union’s consent before implementing the change shifts the burden of who must initiate arbitration to the employer and, thus, strips from the employer the right to first implement a change to the insurance coverage.[4] The union argues, in response, that the agreement does not give the employer the unfettered right to change insurance coverage, and, since the contract is silent on what the employer’s rights or limitations are when it changes benefits without changing carriers, the arbitrator was permitted to bring her informed judgment to bear to fill this gap by concluding that the employer must first get the union’s consent before changing benefits.
It does not follow from the fact that the agreement does not accord the employer the affirmative right to change coverage that the employer in fact does not have that right. Rather, where an agreement between management and a union is silent on a subject, management retains discretion over that subject. As the Supreme Court noted:
Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them. Management hires and fires, pays and promotes, supervises and plans. All these are part of its function, and absent a collective bargaining agreement, it may be exercised freely except as limited by public law and by the willingness of employees to work under the particular, unilaterally imposed conditions.
United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). We had the opportunity to apply this language from Warrior & Gulf in Appalachian Regional Healthcare, Inc. v. United Steelworkers of America, 245 F.3d 601 (6th Cir.2001). In Appalachian, a dispute between an employer and the union representing its employees concerning the employer’s authority to require part-time employees to work more than their scheduled shifts was submitted to an arbitrator. 245 F.3d at 603-04. The arbitrator concluded that the employer could not require part-time employees to work more than their scheduled shifts because “[tjhere is no provision [in the collective *852 bargaining agreement] permitting the Employer” to do so. Id. at 606 (emphasis in original). This Court reversed, holding that the “arbitrator created a limitation on [the employee’s management rights that is not found in the Agreement.” Id. In reaching this conclusion, we noted that a collective bargaining agreement “need not include provisions permitting management action on every conceivable employment matter; rather, on issues not discussed in the Agreement, management retains discretion.” Id. (citing Warrior & Gulf Navigation Co., 363 U.S. at 583, 80 S.Ct. 1347). Similarly, the fact that there is no affirmative language in the collective bargaining agreement “permitting” the employer here to change insurance coverage does not support the conclusion that the employer is without the authority to do so.
Furthermore, although the agreement does not give the employer the unfettered right to change insurance coverage, but rather is silent on what must be done when the employer changes coverage without a corresponding change in carriers, this does not give the arbitrator free reign to craft a remedy devoid of any connection to the agreement. Rather, in crafting the remedy, the arbitrator must arguably be construing the agreement.
If the arbitrator need not (or did not) interpret section 12.7’s “notice, explain, and discuss” provisions as applying to the context here where there was not a change in carriers (even though the arbitrator did interpret section 12.7’s “substantially the same benefits” provision as applying to this context), then it is difficult to discern how the arbitrator was at all construing the contract. The arbitrator does not point to any other provision in the agreement that it relied upon in fashioning her award. Rather, she simply asserts the following:
“Health insurance benefits are an integral and critical component of the employees’ working conditions.... Management has an obligation not to erode those benefits; the [union] has a duty to preserve them. Consequently, the provisions of the insurance package must be protected from unilateral action by the employer. Management must notify the [union] about contemplated modifications and seek its approval.”
This conclusion does not rely upon the parties’ agreement. If the arbitrator did not rely upon the agreement in fashioning relief, then her requirement that the employer must first obtain the union’s consent before implementing changes to insurance coverage would simply reflect the arbitrator’s own brand of industrial justice. The prohibition against an arbitrator dispensing her own brand of industrial justice was forcefully stated by the Supreme Court in United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (emphasis added):
When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.
363 U.S. at 597, 80 S.Ct. 1358 (emphasis added). Thus, although we must certainly give the arbitrator a fair share of deference in fashioning relief, if the relief *853 awarded by the arbitrator is not derived from the interpretation and application of the agreement, or even a single provision in the agreement, such as section 12.7, then the award must be vacated.[5]
If the arbitrator was interpreting section 12.7’s “notice, explain, and discuss” provisions when crafting the remedy, then it is difficult to see how the arbitrator’s requirement that the employer also obtain the union’s consent before implementing a change to insurance coverage could be anything but an additional requirement not found in or rationally derived from the agreement. Our decision in Ford Motor Company v. Plant Protection Association National, 770 F.2d 69 (6th Cir.1985) is analogous. In Ford Motor, the agreement between the union and Ford provided that “where the introduction of new or advanced technology at a plant location affects the job responsibilities of included employees, local management will discuss the matter with the Union. Such discussion will take place in advance of implementation of such technological change as is practicable.” 770 F.2d at 72. From this language, the arbitrator found that “Ford [had] agreed ... to meet and discuss new technology with [the union] before adopting it.” Id. at 73. The arbitrator then went on to order Ford to “bargain such changes affirmatively.” Id. at 73. We reversed, noting that “[t]here was nothing in the agreement ... which required Ford to bargain either affirmatively or otherwise on this matter.” Id. at 75. We concluded that the “arbitrator exceeded his authority in requiring Ford to bargain affirmatively” as “[t]his award imposed an obligation on Ford not found in the agreement.” Id. at 75. Similarly, here, the only provision of the agreement that deals with insurance provides only that the employer must give the union notice of a change and explain and discuss all maters related to the change. The arbitrator’s requirement that the employer first obtain the union’s consent before implementing a change thus adds an additional requirement not found in the agreement.
Since I believe that the arbitrator was not arguably construing the contract in requiring the employer to obtain the union’s consent before implementing a change in coverage, but rather added an additional requirement not found or rationally derived from the agreement but based solely upon the arbitrator’s own view of industrial justice, I respectfully dissent.

. The union's "statement of the grievance" supports the interpretation that although the benefits must remain substantially the same, the employer may initially change the benefits. The grievance reads, "Employer changed insurance and [benefits are] not substantially the same as previous coverage.” The union simply asked the arbitrator to determine whether the employer’s change in benefits resulted in benefits that were not substantially the same as previous coverage, and, if so, to make the union’s members whole. By requiring that the employer first obtain the union’s consent before implementing a change in benefits, the union received more than it even asked for.

. In Beacon Journal Publishing Company v. Akron Newspaper Guild, 114 F.3d 596, 600-601, cited by the majority, we reversed the arbitrator’s substantive decision that the employer violated the agreement when it scheduled vacations because the employer had the specific right in the agreement to do so. However, we vacated the arbitrator’s award because the union was "[u]nable to point to a contractual basis” supporting it. Id. at 601. We noted that "the arbitrator imposed his own brand of 'industrial justice’ ... by crafting [an award] that do[es] not even arguably derive [itself] from the contract.” Id. at 600. Rather, we continued, "[i]t appears that the arbitrator imposed [this award] in an effort to form a ‘better solution' for the parties than that which could be found in the terms of the agreement itself.” Id. This, we noted, "is in direct contravention of the principle that awards not be based on principles of fairness, but instead on precise terms of the collective bargaining agreement.” Id. Similarly, if the arbitrator was not interpreting section 12.7 as applying here where there is a change in coverage but not a change in carriers, then the arbitrator’s award would erroneously be based on principles of fairness and not on the precise terms of the collective bargaining agreement.