INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) and its Local 375, Plaintiffs,

v.

NORTHERN TELECOM, INC., a Delaware Corporation, and Northern Telecom, Ltd., a Quebec, Canada Corporation, Defendants.

Civ. A. No. 6–71306.

United States District Court,
E. D. Michigan, S. D.

June 14, 1977.

John A. Fillion, Anne Trebilcock, Detroit, Mich., for plaintiffs.

Thomas M. J. Hathaway, Riley & Roumell, Detroit, Mich., James M. Paulson, Morgan, Brown, Kearns & Joy, Boston, Mass., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This lawsuit arises out of the decision of defendant Northern Telecom, Inc., [hereinafter referred to as "NTI"] to close its manufacturing facility located at Port Huron, Michigan, and move the work being done there to a new facility in Tennessee. On March 31, 1976, a collective bargaining agreement was executed between NTI and the union representing the workers at the Port Huron facility, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 375 (UAW) [hereinafter referred to as "UAW" or the "Union"], which was to remain in effect from February 13, 1976 until February 12, 1979. Shortly thereafter, on June 4, 1976, the decision to move operations from Port Huron to Tennessee was announced.

The UAW brought this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and has since filed an amended complaint alleging that the relocation violated the express language of several provisions of the collective bargaining agreement. Further, the Union claims that NTI has breached an implied duty of good faith and fair dealing in the negotiation of the agreement. In addition, the UAW alleges that if the collective bargaining agreement does not require NTI to keep its work at the Port Huron facility during the life of the collective bargaining agreement, then NTI is guilty of fraudulently inducing the Union to enter into the agreement. Further, Northern Telecom, Ltd., [hereinafter referred to as "NTL"] the parent corporation of NTI, is alleged to be guilty of tortious interference with a contractual relationship, and both NTI and NTL are alleged to have tortiously conspired for the purpose of breaking the collective bargaining agreement.

Defendants have filed a motion to dismiss the amended complaint or in the alternative for summary judgment. For the reasons discussed below, defendants' motion is granted.

### Contract Claims

The UAW alleges that NTI's relocation of its manufacturing work from the Port Huron plant to Tennessee violated thirteen provisions of the collective bargaining agreement.[1] The defendants have respond-

---

1. The provisions allegedly breached by NTI are the following:

 Article 1: Recognition
 Article 2: Management Rights

 Article 3: Purpose
 Article 4: Nondiscrimination
 Article 8: Seniority
 Article 15: Paid Holidays

ed with a two-pronged argument. First, the defendants argue that the Union has not exhausted its contract remedies by taking the alleged breach through the grievance and arbitration procedure provided for in the collective bargaining agreement. Second, the defendants argue that no provision of the collective bargaining agreement expressly deny to the employer the right to relocate.

### Exhaustion of Contract Grievance and Arbitration Remedies

The UAW and NTI are parties to a collective bargaining agreement which contains provisions for binding arbitration as the agreed upon method of dispute settlement. Articles 9 and 10 of the agreement provide a grievance and arbitration procedure. The scope of this procedure is delineated in the first sentence of the grievance provision, Article 9:

"It is the intent of the parties hereto that the grievance procedure set forth herein shall serve as a means for the peaceful settlement of all disputes that may arise between them concerning the interpretation or application of the terms of this agreement."

Paragraph 3 of the Arbitration provision, Article 10, provides that:

"The decision of the arbitrator shall be final and binding on the Company, the Union and its members . . . ."

The contract count of this lawsuit is for damages arising out of defendants' alleged breach of the collective bargaining agreement. There is a serious question whether the union should have exhausted its remedies under the contractual grievance and arbitration provisions before coming into court to enforce the contract. See *United Electrical Workers v. Honeywell, Inc.*, 522 F.2d 1221 (7th Cir. 1975); *California State Council of Carpenters v. Associated General Contractors of California, Inc.*, 404 F.Supp. 1067 (N.D.Cal.1975); *American Postal Workers v. United States Postal Service*, 396 F.Supp. 608 (N.D.Tex.1975). However, the court does not rest its grant of the motion to dismiss on this basis.

### Violations of Specific Provisions of the Collective Bargaining Agreement

Assuming this lawsuit is properly brought in this court before resort to the grievance and arbitration provisions of the collective bargaining agreement, the plaintiffs cannot make out a cause of action under the collective bargaining agreement.

The UAW contends that the relocation violates thirteen provisions of the collective bargaining agreement.[2] There are four provisions in particular, however, that the Union has relied upon to establish a breach of the agreement: Article 1, the Recognition clause; Article 2, the Management Rights clause; Article 26, the General Waiver clause; and Article 27, the Duration clause.[3] Neither these four clauses, nor the

Article 16: Vacation with Pay
Article 22: Insurance
Article 23: Cost of Living Adjustment
Article 24: Job Classification
Article 25: Rates of Pay
Article 26: General
Article 27: Duration, Modification and Renewal

2. See note 1, *supra.*

3. These four clauses in full read as follows:

ARTICLE 1
RECOGNITION

1. .The Company recognizes the Union as the exclusive bargaining agent of all full-time and regularly scheduled part-time production and maintenance employees employed by the Company at its 2407 16th Street, Port Huron, Michigan plant; but excluding all casual and seasonal employees, office clerical employees, management, technical, and professional employees, guards, and supervisors as defined in the Act on matters of wages, hours and other conditions of employment during the term of this agreement.

2. This recognition is made pursuant to the certification of the National Labor Relations Board made under date of 19 September 1972, in Case No. 7RC–11254.

ARTICLE 2
MANAGEMENT RIGHTS

1. The Union acknowledges that it is the exclusive right of the management of the Company to: hire, lay off, discharge, classify, transfer, promote, demote or discipline employees subject to the provisions of this Agreement.

other nine cited by the Union support their claims.

The Recognition clause provides that "The Company recognizes the Union as the exclusive bargaining agent of all full-time and regularly scheduled part-time production and maintenance employees employed by the Company *at its 2407 16th Street, Port Huron, Michigan plant* . . . ." [emphasis added] By the express terms of this clause, it applies only to those employees at the Port Huron plant. It does not recognize the Union as the bargaining agent for all employees of the Company, nor for all employees performing the work assigned to the Port Huron plant. It only recognizes the Union as the collective bargaining agent for employees employed at that particular location. This clause does not in any way purport to limit NTI's right to relocate, nor does it require as a part of the contract that the company would continue to provide work at the Port. Huron plant for the Union's members.

 The Court of Appeals has indicated that such a recognition clause is only applicable to the location that it expressly covers. If a business picks up and moves, a recognition clause which specifically refers to a particular location or plant cannot be looked to as a source of continuing rights. *Oddie v. Ross Gear and Tool Company,* 305 F.2d 143 (6th Cir. 1962).

In *Wimberly v. Clark Controller Company,* 364 F.2d 225 (6th Cir. 1966), the court was faced with another plant relocation case. This case was an action for damages because of the removal of a plant from Ohio to South Carolina. In discussing the recognition clause in the collective bargaining agreement, the court said:

> "The above language quoted from the agreement entered into between Clark and the Union [the recognition clause] has the same limiting effect as the provisions contained in *Oddie v. Ross Gear and Tool Company* . . . The agreement does not give rights to employees of Clark, wherever Clark might be located. As a matter of law, the complaint did not state a cause of action for the lay-offs resulting from the transfer of the Woodland Avenue plant to South Carolina." 364 F.2d at 228.

2. The Union acknowledges the exclusive right of the Company to operate and manage its business in all respects, and without restricting the generality of the foregoing, to maintain order and efficiency and to determine the number of location of work areas, the methods to be used in operations, schedules, kinds and location of machines and tools to be used, processes of manufacturing, repairing and warehousing and the control of material and parts to be used.

3. The Union further acknowledges that all the rights, powers and authority of the Company are retained by the Company, except those specifically abridged or modified by this agreement and any supplementary agreements that may hereafter be made.

ARTICLE 26
GENERAL

1. The parties acknowledge that during the negotiations which resulted in this Agreement each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the Company and the Union, for the term of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Agreement.

2. Both parties agree to comply with all state and federal laws.

ARTICLE 27
DURATION, MODIFICATION AND RENEWAL

1. This Agreement shall become effective on the 13th day of February 1976 and shall remain in full force and effect up to and including February 12th, 1979.

2. It will remain binding for a further period of twelve (12) months unless either party gives to the other party a written notice of its desire to amend, modify or terminate the Agreement, said notice to be sent not more than ninety (90) days nor less than thirty (30) days prior to the date of termination. Within ten (10) days after such notice is given, a conference should be held for negotiations.

■ In the case before this court, just as in the *Wimberly* case, the recognition clause does not give rise to a cause of action resulting from the relocation of the plant from Port Huron to Tennessee.

■ The plaintiffs claim that Article 2, the management rights clause, has been violated by the relocation to Tennessee. The management rights clause, to be sure, contains no language giving NTI the express right to relocate but the absence of this language does not signify that such a right does not exist. The Court of Appeals in *Fraser v. Magic Chef-Food Giants Markets, Inc.*, 324 F.2d 853 (6th Cir. 1963), discussed such a management rights clause and concluded:

> "Article X of the contract is a rather standard management rights clause. It contains no provision for or reservation of the right to discontinue business. It is silent on the matter. We agree with the statement of the trial judge: 'While it is true that a management rights clause cannot be used to destroy the rights granted by other provisions, it is also true that the clause is never intended as a comprehensive enumeration of the rights of management whose effect is to forfeit by silence any rights not expressly reserved. This would place an intolerable burden upon the draftsman of the agreement. Its operation is the reverse of that proposition.' There is no merit to the argument of the appellant that because the Company was not given the express right to discontinue operations in this clause of the contract the right did not exist." 324 F.2d at 856.

In the case before this court, the management rights clause cannot be used as a basis for a claim that NTI breached the collective bargaining agreement in relocating.

■ Article 27 of the collective bargaining agreement is the duration clause. It merely recites that the agreement will remain in effect from February 13, 1976 until February 12, 1979. It simply cannot be read to prohibit NTI from moving its operations from Port Huron to Tennessee. There is no promise in the duration clause that the plant would remain where it was for the entire three year period. Its significance is that if the plant remains open in Port Huron for the term of the contract, the relationship between the employer and the employees, and the rights of each, will be governed by it. *Fraser, supra.*

■ The fourth major clause that the Union relies upon is the general waiver clause, Article 26. This article waives the right of both parties to the agreement to bargain collectively on any issue that was either included in the agreement or that was not incorporated into the agreement for the duration of the contract. There is no language in this clause which would indicate that NTI had a contractual obligation not to relocate the plant and therefore, this clause cannot be relied upon as a basis for a claim of breach of the collective bargaining agreement.

The Union cites nine other clauses in the contract that it claims have been breached by the relocation to Tennessee.[4] The court has examined these clauses and finds no language in any of these provisions which supports the UAW's claim of breach of the collective bargaining agreement. In *Wimberly, supra*, the court noted:

> "Absent an express contractual provision, there is no prohibition against the Defendant moving its operations . . .." 364 F.2d at 228.

The Union in this case has pointed to no express contractual provision to support its claim of breach and none can be cited. The Union's contract claim must therefore be dismissed.

### The Covenant of Fair Dealing and Good Faith Bargaining

Count II of the First Amended Complaint alleges that the defendants have breached an implied covenant of fair dealing which is alleged to be a part of collective bargaining. There are three particulars alleged:

---

4. See note 1, *supra.*

1. That the defendants refused prior to the execution of the current agreement to tell the UAW of their intentions.

2. That the defendants nullified the Union's and the employees' rights under the collective bargaining agreement.

3. That the defendants acted to destroy the right of the Union and the members it represents to receive the fruits of the contract negotiated by them.

■ It is readily apparent that the second and third specific allegations amount to no more than a rephrasing of the UAW's claim that the collective bargaining agreement has been breached. There is no *implied* covenant not to breach a contract, the promise not to breach is the essence of the *express* covenants of the contract. Therefore, these two allegations add nothing to the plaintiffs' case.

■ The first allegation in Count II alleges that defendants had a duty to disclose certain information. It does not allege that NTI made a specific false statement. An allegation such as this was in issue in *Hotel and Restaurant Employees' Alliance, Local No. 237, Hotel and Restaurant Employee's Alliance v. Allegheny Hotel Co.*, 374 F.Supp. 1259, at 1266 (W.D.Pa. 1974), in which the court said:

"Plaintiff employees argue that defendant Hotel was under a duty to disclose its financial circumstances and the omission to disclose constitutes a material misrepresentation.

"There is no duty to disclose between parties to an arm's length transaction, where no confidential relationship exists. This is the situation in collective bargaining negotiations."

This court agrees. The UAW has alleged no cause of action against the defendants for failure to disclose. Therefore, this count will be dismissed. Further, if this count had stated a claim it would be a state claim, subject to dismissal for lack of jurisdiction as will be more fully developed in the following sections of this opinion.

## Tort Claims

■ The Union has alleged various tortious actions on the part of NTI and NTL in its complaint. These alleged torts arise out of the same facts as the alleged breach of the collective bargaining agreement and the court has pendent jurisdiction over them. *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, it is clearly stated in *Gibbs* that, ". . . if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139. Therefore, since the claims for breach of the collective bargaining agreement under § 301 are being dismissed, the claims in Counts II through VI should be dismissed at this time if it is true as argued by the defendants that they attempt to state strictly state causes of action.

The Union has argued that these particular torts are federal causes of action. The position of the Union is that these torts are so closely connected with the formation and enforcement of collective bargaining agreements that they fall within the scope of § 301 and are governed by federal law. The court finds the argument and the cases cited to support this position unpersuasive.

The cases cited by plaintiffs for the proposition that torts committed within the context of collective bargaining are federal claims under § 301 either cannot be read so broadly, or do not hold that at all.

The Union relies primarily on the cases of *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1963), and *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). These cases establish that the breach of the duty of fair representation by a union falls within § 301 and is a federal cause of action. The UAW argues from this that since the breach of the duty of fair representation is a tort, it is therefore established that § 301 covers collective bargaining torts.

An analysis of the reasoning of *Humphrey* and *Vaca* shows that what the Supreme Court was concerned with was the special problem of employees' § 301 suits

for violation of a collective bargaining agreement when the agreement had a grievance and arbitration provision in which the union had the responsibility of representing the employee. In *Vaca, supra,* the Supreme Court explained why an action for breach of the duty of fair representation would necessarily be within the federal court's § 301 jurisdiction, and not pre-empted by the jurisdiction of the National Labor Relations Board under the doctrine of *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The Court stated:

> "There are also some intensely practical considerations which foreclose pre-emption of judicial cognizance of fair representation duty suits, considerations which emerge from the *intricate relationship between the duty of fair representation and the enforcement of collective bargaining contracts.* For the fact is that the question of whether a union has breached its duty of fair representation will in many cases be a critical issue in a suit under L.M.R.A. § 301 charging an employer with a breach of contract." 386 U.S. at 183, 87 S.Ct. at 913.

The Court further noted:

> ". . . We think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." 386 U.S. at 186–187, 87 S.Ct. at 914–915.

These passages indicate that the Court in the breach of fair representation cases was not setting out a general rule that all collective bargaining related torts are cognizable under § 301, but rather that in the context of a § 301 suit for breach of the collective bargaining contract, it will often be necessary to show such a breach of the duty of fair representation and therefore to this limited extent, the court can hear such cases. The Court in *Humphrey, supra,* noted carefully that:

> "Since issues concerning the jurisdiction of the courts and the governing law are involved, it is well at the outset to [point out] . . . that this is an action to enforce a collective bargaining contract . . . ." 375 U.S. at 341, 84 S.Ct. at 367.

Thus *Humphrey* and *Vaca* cannot be used as the basis of an argument that § 301 encompasses suits for tort actions generally arising out of the collective bargaining process.

Similarly, the other cases cited by the Union do not support its contention of § 301 jurisdiction over these state tort actions, *Omaha Beef Co. v. Meatcutters,* 59 L.R. R.M. 2719 (D.Conn.1965); *International Union, UAW v. Cardwell,* 416 F.Supp. 1267 (D.Kan.1976).

In *Omaha Beef* the plaintiff's only concern was with the operation of the collective bargaining contract. The issue was a problem in the enforcement of that contract, not with the tortious actions which led him to enter into the contract. It cannot be used as authority to support the argument that § 301 includes tort claims generally. *Cardwell, supra,* actually carefully distinguished among the claims made by the plaintiff, finding § 301 jurisdiction for the allegations of breach of the collective bargaining agreement and diversity of citizenship for the state common law claims.

The analysis of the scope of § 301 found in *Adams v. Budd Company,* 349 F.2d 368 (3d Cir. 1965), is accurate in deciding the Union's contentions in the instant case that its tort claims fall within § 301 jurisdiction. In *Adams* several employees of the Budd Company were suing in federal court under § 301 alleging that they had been deprived of certain "super-seniority" which they had acquired under their "original contract of hire." They alleged that the negotiation of a collective bargaining contract between the union and the company limited the seniority which they, as disabled employees had enjoyed prior to the execution of this collective bargaining contract. The court had this to say regarding whether such a claim falls within § 301 at 349 F.2d 369–70:

". . . Union contends that Section 301(a) accords jurisdiction to the federal courts over actions for breach of a labor contract and the plaintiffs' complaint fails to allege such a breach; further, plaintiffs' 'claim is not based upon a *violation* of a contract between an employer and labor *organization*' but 'solely upon the adverse effect upon plaintiffs of the *negotiation* of such an agreement.'

"Union's contention is well-taken.

"The distilled essence of the plaintiffs' position is that they can enforce, under Section 301(a), their 'contract of hire' super-seniority rights, accorded under Budd's pre-labor contract policy, even though subsequently negotiated collective bargaining agreements bargained away such rights.

"The plaintiffs seem to be oblivious of the fact that Section 301(a) only creates federal jurisdiction, in the absence of diversity of citizenship, with respect to '*[s]uits for violation of contracts* between an employer and a labor organization * * * or between any such labor organizations.' (emphasis supplied)

"Here the plaintiffs do not seek redress for violation *of* a collective bargaining agreement; what they seek is redress for an alleged violation *by* a labor contract of rights which they assert were independently, and pre-agreement, vested in them by their 'contract of hire.'

"We are of the opinion that Section 301(a) did not confer jurisdiction upon the District Court to entertain this action and that it should have dismissed it for that reason. As we earlier stated, it is conceded that diversity jurisdiction does not exist here.

"The cases relied on by the plaintiffs to sustain their claim to Section 301(a) jurisdiction are inapposite.

"In *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) the suit was based on an alleged breach of the seniority provisions *of* a collective

bargaining agreement. It was there charged that the employer and the union had acted in a manner contrary to the explicit provisions of the labor agreement.

"In *Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) it was also charged that the union and the employer had violated rights of employees 'arising *from* a collective bargaining contract.' (emphasis supplied).

"Humphrey and Smith hold only that Section 301(a) creates jurisdiction in the District Court to entertain suits 'to vindicate individual employee rights *arising from a collective bargaining contract* * * *.' 371 U.S. 200, 83 S.Ct. 270 (emphasis supplied)."

Similarly, in this case, the Union is alleging various torts committed in negotiating the collective bargaining contract. Section 301 jurisdiction does not include claims for recovery for torts arising from the negotiation of a collective bargaining contract, but only those claims dealing with the enforcement of the collective bargaining contract itself.[5]

Therefore, the claims in the Union's complaint, Counts II through VI in tort, must be dismissed at this time. They do not state federal claims, and they are pendent to no pending federal claim. *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, the defendants' motion is granted and the Union's amended complaint is dismissed.

So ordered.

---

5. The court is expressing no view on whether the alleged tortious actions of the defendants are covered by federal law under the National Labor Relations Board's jurisdiction over unfair labor practices.