**ARCHER–DANIELS–MIDLAND CO., Plaintiff,**

v.

**INTERNATIONAL LONGSHORE-MEN'S ASSOCIATION, LOCAL 1768–D, Defendant.**

**No. 3:02 CV 7619.**

United States District Court, N.D. Ohio, Western Division.

June 24, 2003.

Gregory T. Lodge, Shumaker, Loop & Kendrick, Toledo, OH, Jeremy J. Glenn, Joseph E. Tilson, Meckler Bulger & Tilson, Chicago, IL, for Plaintiff.

Jason P. Parker, Joseph C. Hoffman, Jr., Faulkner, Muskovitz & Phillips, LLP, Cleveland, OH, for Defendant.

*MEMORANDUM OPINION*

KATZ, District Judge.

This matter is before the Court on Plaintiff's motion for summary judgment to vacate an arbitration award (Doc. No. 10), as to which Defendant has filed a response (Doc. No. 15) and cross-motion for summary judgment to confirm the same (Doc. No. 16). Plaintiff has filed a response to Defendant's cross-motion (Doc. No. 18), as to which Defendant has filed a reply (Doc. No. 19).

The Court has jurisdiction to decide this matter pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331. For the reasons stated below, the Court will grant Defendant's cross-motion to confirm, and deny Plaintiff's motion to vacate.

## BACKGROUND

Plaintiff Archer–Daniels–Midland Company ("ADM") owns and operates a grain elevator (the "elevator") along the banks of the Maumee River located at 1308 Miami Street, Toledo, Ohio. ADM receives grain at the elevator, and stores it there until contacted by an ADM customer. The grain is then loaded on a truck, railroad car or ship for delivery. Defendant International Longshoremen's Association, Local 1768D, F/K/A Local 1955 (the "Union") is a labor organization that represents production and maintenance employees (the "Union employees") who work for Plaintiff at the elevator. Prior to the execution of the most recent collective bargaining agreement ("CBA"), entered into for the period February 15, 2002, through February 15, 2005, ADM hired outside contractors to load grain onto ships.

In April 2002, ADM assigned ship-loading/stevedoring duties, including the loading of grain, to Union employees. The Union objected and filed a grievance. Unable to resolve the dispute, ADM and the Union proceeded to an arbitration before Marvin J. Feldman (the "Arbitrator"). On September 17, 2002, the Arbitrator presided over an arbitration hearing to resolve the Union's grievance that ADM had violated both the terms of the CBA and established custom and practice by assigning Union employees ship-loading duties. The Union also asserted that ADM had violated the CBA by failing to provide requisite notice and hold a meeting prior to implementing this change.

On November 11, 2002, the Arbitrator issued an Opinion and Award (the "Arbitration Award") finding in favor of the Union. The Arbitrator ordered ADM to cease and desist from assigning Union employees stevedoring duties, and awarded the Union employees back-pay at the rate paid to those who would have performed these duties. Plaintiff then filed the instant action seeking summary judgment to vacate the Arbitration Award. Defendant filed a counter-claim along with a cross-motion for summary judgment to confirm the same.

## DISCUSSION

*A. REVIEW OF ARBITRATION AWARD STANDARD*

The review of "arbitration awards [is] 'one of the narrowest standards of judicial review in all of American jurisprudence.'" *DBM Tech., Inc. v. Local 227, United Food & Commercial Workers Int'l Union,* 257 F.3d 651, 656 (6th Cir.2001) (quoting *Lattimer–Stevens Co. v. United Steelworkers of Am., AFL–CIO, Dist. 27, Sub–Dist. 5,* 913 F.2d 1166, 1169 (6th Cir. 1990)). Federal courts accord significant deference to arbitrators' decisions. *DBM,* 257 F.3d at 656; *Appalachian Reg'l Healthcare, Inc. v. United Steelworkers of Am., AFL–CIO, Local 14398,* 245 F.3d 601, 604 (6th Cir.2001); *Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local 7,* 114 F.3d 596, 599 (6th Cir.1997). "Even if a court is convinced that an arbitrator has

committed serious error, therefore, it may not overturn the arbitration award 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Bruce Hardwood Floors v. S. Council of Idust. Workers,* 8 F.3d 1104, 1107 (quoting *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).

▆▆▆ Nevertheless, review of an arbitration decision "is not toothless," and an arbitration award must be vacated when the arbitrator "departs from 'even arguably construing the contract.'" *Beacon Journal,* 114 F.3d at 599 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). An arbitrator's decision and award "must 'draw[ ] its essence from the collective bargaining agreement' rather than serve the arbitrator's 'own brand of industrial justice.'" *Appalachian Reg'l,* 245 F.3d at 604 (quoting *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. 1358). A court must vacate an arbitration award if it fails to draw its essence from the collective bargaining agreement. *Beacon Journal,* 114 F.3d at 600. Conversely, if the decision and award is drawn from the essence of the agreement, the award will be confirmed. *DBM,* 257 F.3d at 656.

▆▆ An arbitration award fails to draw its essence from the agreement when: "(1) an award conflicts with express terms of a collective bargaining agreement, (2) an award imposes additional requirements not expressly provided in the agreement, (3) an award is without rational support or cannot rationally be derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement." *Id. See also Appalachian Reg'l,* 245 F.3d at 604–05; *Beacon Journal,* 114 F.3d at 600. *Bruce Hardwood,* 8 F.3d at 1107; *Cement Divs.,*

*Nat'l Gypsum Co. v. Union Steelworkers of Am., AFL–CIO–CLC, Local 135,* 793 F.2d 759, 766 (6th Cir.1986).

### B. PLAINTIFF'S MOTION TO VACATE AND DEFENDANT'S MOTION TO CONFIRM

Plaintiff moves the Court for summary judgment to vacate the Arbitration Award arguing that it fails to draw its essence from the CBA. In contrast, Defendant takes the opposite position and moves the Court for summary judgment to confirm.

#### 1. Pertinent Terms of the CBA

The pertinent terms of the CBA on which the disparity in the parties positions centers are:

*Section 1.01 Recognition*

The company hereby recognizes the Union as the exclusive bargaining agent for all full-time production and maintenance employees employed by the Company *at its elevator located at 1308 Miami Street, Toledo, Ohio* for the purpose of collective bargaining relative to rates of pay, wages hours and other conditions of employment, subject to the provisions of the National Labor Relations Act as amended. This shall exclude all office and clerical employees, grain inspectors, guards and/or watchmen, professional and technical employees, seasonal and part-time employees, and supervisors as defined in the National Labor Relations Act, as amended, and all other employees.

*Section 2.01 Management Rights*

*The Company unilaterally retains any and all rights not expressly limited by the specific terms of this labor Agreement.* Among these rights, but not intended as a wholly inclusive list, shall be the right to manage the plant and direct the workforce; to plan, direct and control plant operations; to determine the means, methods, processes and sched-

ules of production; to determine the products to be manufactured or processed, and the plant or facility at which they are to be manufactured or processed; to transfer work temporarily or permanently between plants; to temporarily or permanently close the plant or any portion thereof during the term of the Agreement; to determine the location of its plants and the continuance of its operating departments; to unilaterally decide to on "make" or "buy" decisions; to determine the number of personnel needed; to determine schedules, shift assignments, and hours of work including overtime; to determine the number of shifts; to promote, demote or transfer employees from one job to another, to discipline, suspend, demote or discharge employees for just cause; to maintain order, to hire, rehire or recall employees; to layoff or relieve employees from duty because of lack of work or any other legitimate reason; to make and enforce reasonable plant rules and regulations; to install, use and move cameras and other surveillance equipment, whether the cameras or other equipment are visible or hidden; to make and enforce smoking rules and regulations; to make and enforce safety rules; to control absenteeism; *to assign employees to work and designate the duties of the employees; to change, modify, eliminate or reassign job duties; to set the wage rate for newly created jobs; to unilaterally make any decisions or changes which, in the opinion of management, the efficient operation of the plant requires;* to contract out work including, but not limited to repair, maintenance, fabrication, construction work and other work as the Company chooses, or have such afore-

mentioned work performed by other Company personnel, including employees of the Company's own maintenance and construction crews operating from other locations.

*Section 3.01   Grievance Procedure*

  *Step 4* (Arbitration)

  D—The Arbitrator shall have no authority to add to, or subtract from, or modify any of the terms of this Agreement, nor to establish or change any wage rate. Any decision or award of an Arbitrator shall be final and binding on the Union, the Company and the employees.[1]

*Section 4.01   Job Classifications and Rates of Pay*

  NOTES APPLICABLE TO JOB CLASSIFICATIONS

  1. *Employees will perform any duties to which they may be assigned.* This may include the assignment of duties which either overlap or are performed by other job classifications. Maintenance, lubrication and housekeeping duties are considered as part of the duties of all job classifications. Employees who either perform maintenance duties or assist in performing maintenance duties will be paid at the rate of their own regular job classification. The Company shall have no obligation under the labor Agreement to establish a light duty job or classification.

*Section 6.12 New or Modified Job Classifications*

A—When and if from time to time *the Company, at its discretion, either establishes a new job classification or substantially modifies an existing job*

---

**1.** In *Appalachian Reg'l,* the court explained that when collective bargaining agreements contain such a term, an arbitrator may not create additional limitations on management rights not otherwise present. *Appalachian Reg'l,* 245 F.3d at 606–07.

*classification (such substantial modification resulting from the elimination of another job classification and/or reassignment of additional duties to an existing job classification),* then the Company will establish a rate for such classification, and if requested by the Union, shall after 60 days of job experience negotiate with the Union a permanent rate for such job classification.

> *Note 1A:* For purposes of keeping the Union informed, at least one week prior to making changes under the provisions of this Section, the Plant Manager will meet and discuss such changes with the Union Grievance Committee.

*Section 13.04   Complete Agreement*

This Agreement, including a Letter Agreement and a Substance Abuse Policy, represents the complete agreement between the parties and shall supercede and replace all prior agreements and understandings, oral or written, expressed or implied, between the parties hereto and shall constitute the entire Agreement between the parties. *Past practices, procedures and understandings may be changed by management unless specifically prohibited by the provisions of this labor Agreement.* This Agreement may be amended in any of its provisions by mutual agreement of both parties. If agreements are made after the effective date of this Agreement, they must be in writing, in duplicate.

(Doc. No. 1, Ex. A).

2.   Arbitration Award Draws its Essence from the CBA

Plaintiff asserts that the Arbitration Award barring ADM from assigning Union employees to ship-loading duties conflicts with express provisions of the CBA as embodied in Sections 2.01, 4.01, 6.12 and 13.04. In *Appalachian Reg'l*, the court affirmed the district court's grant of summary judgment, vacating an arbitration award prohibiting an employer from requiring part-time employees to work overtime, finding that this limitation was in conflict with express terms of the subject agreement. *Appalachian Reg'l*, 245 F.3d at 605. In *Appalachian Reg'l*, the court also found that the arbitrator had exceeded his authority by imposing a limitation on the employer not found in the collective bargaining agreement, even though faced with language synonymous to Section 3.01, Step 4–D in the CBA *sub judice.* The *Appalachian Reg'l* court asserted that the "Agreement need not include provisions permitting management action on every conceivable employment matter; rather, on those issues not discussed in the Agreement, management retains discretion." *Id.* at 606.

The Arbitrator's reliance on Section 1.01 (the "Recognition Clause"), an express term, distinguishes the Arbitration Award before the Court from that reviewed in *Appalachian Reg'l.* In the case *sub judice,* the Arbitrator stated:

> The crux of this matter really lies in the recognition clause. That particular clause states that the company recognizes the union as the exclusive bargaining agent for all full-time production and maintenance employees employed by the company at its elevator located at 1308 Miami Street, Toledo, Ohio. That language is clear and unambiguous.
>
> Now, along comes a boat, ties itself to a dock on a national waterway to receive grain stored by the company herein. It is questionable whether the address of the boat is 1308 Miami Street, Toledo, Ohio. There is no evidence of any tax payment for real estate made on behalf of the boat. There is no evidence that the company herein owned the boat. There is no evidence herein that the workers herein, i.e., the longshoremen,

were trained to load a boat at any prior time; there is not evidence herein that 1308 Miami Street, Toledo, Ohio, was address of this boat or any other boat. As a matter of fact, different boats are used from time to time by the company herein. Furthermore, the language is express that the bargaining unit members are employed by the company at its elevator. To read anything more into that clause would be a modification of the contract which is contrary to the understandings by and between the parties.

An elevator is an elevator; it is not a dock; it is not a boat; it is not anything other than an elevator. The bargaining unit herein were longshoremen organized for the purpose of production and maintenance by the elevator ow[n]ed by the company at 1308 Miami Street, Toledo, Ohio. It is true that the bargaining unit herein loads and unloads trucks and railroad cars, but longshoremen have never loaded nor unloaded boats. Traditionally, that is a stevedoring duty *and* it is eliminated from the contract by the parties use of an elevator located at a specific land facility at 1308 Miami Street, Toledo, Ohio, an elevator owned by the company herein. That is not true of a boat. That is not true of the waterway. It is true of the elevator and that brought a distinction between the boat and the elevator. If the company had intended to use its employees other than at the elevator it appears to me that the company would have negotiated the use of that bargaining unit for work on a boat. The language of the contract does not so indicate and I will not expand the meaning of an elevator to include a boat at a dock that a company may rent from

time to time for the purpose of its delivery of grain.

(Doc. No. 1, Ex. B, pp. 9–11).

■ Plaintiff's rights under Sections 2.01, 4.01 and 6.12, are circumscribed by the geographical limitation contained in the Recognition Clause, as interpreted by the Arbitrator. The first sentence of Section 2.01 states that "[t]he company retains any and all rights not expressly limited by the specific terms of the labor agreement." Likewise, ADM's ability to assign work or create/modify job classifications under Sections 4.01 and 6.12 is limited by the Arbitrator's interpretation of the Recognition Clause.[2] There is no conflict between Arbitrator's decision and Sections 2.01, 4.01 and 6.12, as ADM is free to exercise all of its rights under these sections within the geographical limitation the Arbitrator found under the Recognition Clause. Accordingly, the Arbitration Award did not add a limitation not found in the CBA.

■ Although recognizing that the Arbitrator acknowledged the express limitation in Section 13.04, ADM contends that the Arbitrator again exceeded his authority by relying on past practices to prohibit Plaintiff from assigning Union employees ship-loading duties based on his own sense of fairness. The Court recognizes that "past practice or custom should not be used to interpret or give meaning to a provision or clause of [a] collective bargaining agreement that is clear and unambiguous." *Beacon Journal*, 114 F.3d at 601. Moreover, an arbitrator's imposition of an award based on his own sense of "industrial justice" or fairness "violates the very touchstone of arbitration—that the award 'draw its essence' from the collective bargaining agreement." *Id.* at 600.

---

**2.** Defendant also argues that Section 6.12 is inapplicable because assignment of stevedoring duties to Union employees did not create a new job classification, and was not due to either the elimination of another job classification or re-assignment of added duties to an existing job classification.

Plaintiff points to several passages in the Arbitration Award that it maintains demonstrate such reliance, including:

> At any rate, the longshoremen herein ratified the contract. Almost immediately thereafter the company assigned the longshoremen to load a boat with grain. Those duties had generally been accomplished by the company in hiring an outside contractor who had employees who were stevedores belonging to a stevedore union.

(Doc. No. 1, Ex. B, p. 3).

> ... but longshoremen have never loaded nor unloaded boats. Traditionally, that is a stevedoring duty ...

(Doc. No. 1, Ex. B, p. 10).

> The contract is with employees who traditionally work on land. The contract contains nothing concerning stevedores. The contract cannot even be implied toward including stevedoring duties because those duties were accomplished by stevedores which is another type of local union with whom the company had contracted with for the loading and unloading of boats. Simply put, this contract on its face is good for work at the elevator for traditional longshoremen duties and for nothing else.

(Doc. No. 1, Ex. B, p. 11).

The Court, however, is persuaded that the Arbitrator did not improperly rely on past practices and impose a limitation not found in the CBA, especially considering these excerpts in the context of the portion from which they are drawn, and the Arbitration Award as a whole. In fact, the Arbitrator stated:

> The union in this matter argued that the past practice by and between the parties during the length of their contractual relationship had been one in which stevedoring duties were never assigned to

the longshoremen. The company argues, therefore, that the language of the contract at 13.04 governs and that the past practice argument has no meaning. The company is quite right. The clear and unambiguous language of the contract at 13.04 disallows the use of prior past practice that was established by and between the parties during a previous contractual relationship.[3] The argument for the union must be held for naught and this matter cannot be disposed of by of that argument, for either side.

> The crux of this matter really lies in the recognition clause.

(Doc. No. 1, Ex. B, p. 9).

Moreover, ADM's first citation on page 3 is taken from the "Statement of Facts" section, which simply provides the background of the instant dispute. As to Plaintiff's second citation on page 10, in the greater context of the relevant portion of the Arbitration Award recited *supra*, the determination that there is a geographical limitation is clearly premised on the Arbitrator's interpretation of the Recognition Clause. The third passage to which ADM directs the Court must also be placed in context. By including the first three sentences, the paragraph reads in full:

> *Nothing in the contract allows use of the longshoremen, the bargaining unit herein, to accomplish the loading or unloading of a boat which are traditionally duties belonging to stevedores. That cannot be implied in this language as I find it in the contract at Article 1, Section 1.01. The contract is with a longshoremen local. The contract is with employees is with employees who traditionally work on land. The contract contains nothing concerning stevedores. The contract cannot even be implied to-*

---

3. This is the portion of the Arbitration Award to which Plaintiff refers in noting the Arbitra-

tor's passing acknowledgment of the import of Section 13.04.

ward including stevedoring duties because those duties were accomplished by stevedores which is another type of local union with whom the company had contracted with for the loading and unloading of boats. Simply put, this contract on its face is good for work at the elevator for traditional longshoremen duties and for nothing else.

(Doc. No. 1, Ex. B, p. 11). Plainly, the Arbitrator's finding that the Recognition Clause imposes a geographical limitation forms the basis of the Arbitration Award.[4]

ADM also argues, which the Union disputes, that the Arbitrator's decision is not rationally supported by or derived from the CBA, and as a result again represents an improper modification of the CBA based on his own sense of fairness. Notwithstanding limited applicability as they are not judicial reviews of arbitration awards, Plaintiff and Defendant direct the Court to a number of cases in support of their respective positions. ADM directs the Court to *King Soopers, Inc. v. NLRB*, 254 F.3d 738 (8th Cir.2001). In *King Soopers*, the court affirmed an NLRB finding that a geographic limitation in a recognition clause specifying that the UFCW represented the grocery and delicatessen employees at "the grocery story owned and operated by the Employer at 5150 West 120th Avenue" was not a clear and unmistakable waiver of the statutory right to continued representation and coverage by the CBA when the grocery store was re-

located "as opposed to simply agreeing to it as an adequate description of the unit." *Id.* at 743.

In contrast, the Union directs the Court to several cases from the Sixth Circuit including *Wimberly v. Clark Controller Co.*, 364 F.2d 225 (6th Cir.1966); *Oddie v. Ross Gear and Tool Co., Inc.*, 305 F.2d 143 (6th Cir.1962); *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of Am. v. N. Telecom, Inc.*, 434 F.Supp. 331(E.D.Mich.1977); *Slenczka v. Hoover Ball and Bearing Co.*, 215 F.Supp. 761 (N.D.Ohio 1963). In *Oddie*, the court reversed the district court, and rejected the plaintiff union members' argument that the CBA conferred on them seniority rights that transferred in full force when the employer moved its facility from Detroit, Michigan to Lebanon, Tennessee, despite geographically limiting language in the subject recognition clause. The *Oddie* court asserted that the plaintiffs' position "ignores the fact that the reference is not to employees of the Gemmer Company but to the Company's employees 'in its plant or plants' within the city limits of Detroit," and that it was "plain that the words were not used for the purpose of merely giving the present location of the Gemmer Company." *Oddie*, 305 F.2d at 149.

The *Wimberly* court reaffirmed *Oddie*, stating that similar language contained in the CBA at issue "has the same limiting effect." *Wimberly*, 364 F.2d at 228.[5] *See*

---

4. Plaintiff also maintains that the Arbitrator added the term "traditional longshoremen duties," which is not used or defined in the CBA in writing that "this contract on its face is good for work at the elevator for traditional longshoremen duties and nothing else." (Doc. No. 1, Ex. B., p. 11). Again, when considered in context, this phrase does not add a term but merely describes the impact of his interpretation of the Recognition Clause.

5. In *Wimberly*, the court noted that the CBA at issue provided in Articles I and II, respectively:

It is agreed that this contract applied to the Industrial Control plants of The Clark Controller Company located in Cleveland or Solon, Ohio, and specifically excludes from the definition of the bargaining unit the employees of any subsidiary company or separately located division of The Clark Controller Company or any division that might be created by converting an acquired

*also Slenczka,* 215 F.Supp. at 763–64 (holding that under *Oddie,* the plaintiffs did not acquire seniority rights beyond the geographic limit contained in the preamble of a CBA stating "this agreement is made and entered into at Bedford, Ohio, . . . is also binding if any existing operation is moved within a sixth [sic] (60) mile radius"). Further, in *N. Telecom,* the court stated:

> The Recognition clause provides that "The Company recognizes the Union as the exclusive bargaining agent of all full-time and regularly scheduled part-time production and maintenance employees employed by the Company at its 2407 16th Street, Port Huron, Michigan plant . . ." [emphasis added] By the express terms of this clause, it applies only to those employees at the Port Huron plant. It does not recognize as the bargaining unit for all employees of the Company, nor for all employees doing the work done at the Port Huron plant. It only recognizes the Union as the collective bargaining agent for employees employed at that particular location.

*N. Telecom,* 434 F.Supp. at 334.

While the cases to which Defendant cites do not stand for the principle that language such as that found in the Recognition Clause *sub judice* limits an employer's ability to conduct operations or assign duties, they do represent the imposition of a geographic limitation, one which is premised on a specific street address.[6] More importantly, and in light of the narrow review by district courts accorded to arbitration awards, it is clear that "[t]he arbitrator arguably construed and applied the agreement, and this is precisely what the parties bargained for him to do." *Bruce Hardwood,* 8 F.3d at 1108. Thus, Plaintiff's motion for summary judgment to vacate the arbitration award is denied, and Defendant's cross-motion for summary judgment to confirm the same is granted.

### CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment to vacate the arbitration award (Doc. No. 10) is denied, and Defendant's cross-motion for summary judgment to confirm the same (Doc. No. 16) is granted.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED, and DECREED, that Plaintiff's motion for summary judgment to va-

---

company or part of a company into a company division.

The Company recognizes the Union as the sole collective bargaining representative for all its hourly rated factory employees in its Cleveland, Ohio plants, . . .

**6.** Relatedly, ADM argues that the Recognition Clause, which merely lists the address, is comparable to that in *Zdanok v. Glidden Co.,* 288 F.2d 99 (2d Cir.1961), and not *Oddie, Wimberly,* or *Slenczka.* In *Glidden,* the court found that employees' seniority rights endured following a change in plant location, finding that the specification of the street address for one plant was merely for the purpose of giving the present location of the company. *Gladden,* 327 F.2d at 103–04.

Granted, the *Oddie* court distinguished *Glidden* by asserting that "in that case there was a specific reference to one plant only, the address of which was specifically given, and there was no specific geographical limitation such as is contained in the agreement in the present case." *Oddie,* 305 F.2d at 149. The Second Circuit, however, expressly overruled *Glidden,* noting that *Oddie* had already been characterized as not truly distinguishable, and that the reasoning in *Glidden* was erroneous. *Local 1251, Int'l Union of United Automobile, Aircraft and Agricultural Implement Workers of Am. v. Robertshaw Controls Co.,* 405 F.2d 29, 32–33 (2d Cir.1968).

cate an arbitration award (Doc. No. 10) is denied.

FURTHER ORDERED that Defendant's cross-motion for summary judgment to confirm an arbitration award (Doc. No. 16) is granted.